# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GAVIN HARRELL
6178 HUMPBACK WHALE COURT
WALDORF, MD 20603,

      Plaintiff,

v.

DISTRICT OF COLUMBIA;
METROPOLITAN POLICE DEPARTMENT;
COMMANDER JAMES M. BOTELER, JR.;
LIEUTENANT ZEB BARCUS;
CAPTAIN MCHAULEY C. MURPHY;
300 INDIANA AVE NW,
WASHINGTON, DC 20001
      Defendants.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND DAMAGES

### INTRODUCTION

1. This action arises from a systematic pattern of racial discrimination, retaliation, and hostile work environment perpetrated against Plaintiff Gavin Harrell, a highly qualified African American police officer who has served with distinction in the Metropolitan Police Department ("MPD") for over twelve years.

2. The discrimination and retaliation began in 2014 and intensified over the past four years, culminating in a series of retaliatory actions after Plaintiff reported misconduct and filed EEO complaints. Defendants have engaged in an orchestrated campaign of harassment, discriminatory treatment, and retaliation that has severely impacted Plaintiff's career advancement, working conditions, and mental well-being.

3. Despite Plaintiff's exemplary service record, including work in the Chief's Office and on the Mayor's Detail, Defendants have subjected him to disparate treatment, denied him reasonable accommodations, manipulated internal investigations, and created a pervasively hostile work environment based on his race.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, including 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events giving rise to these claims occurred within this district.

## PARTIES

6. Plaintiff Gavin Harrell is an African American male who has served as a police officer with the Metropolitan Police Department since July 18, 2012. He was recently promoted to Lieutenant but continues to face discrimination and retaliation.

7. Defendant District of Columbia operates the Metropolitan Police Department and is responsible for its policies, practices, and customs.

8. Defendant Metropolitan Police Department is the primary law enforcement agency for the District of Columbia.

9. Defendant James M. Boteler, Jr. serves as Commander of the Third District (Defendant James M. Boteler, Jr. serves Commander of the Seventh District after he was reassigned from the Third District as a result of poor behavior with an African American sergeant) and has directly participated in discriminatory and retaliatory actions against Plaintiff.

10. Defendant Zeb Barcus served as Lieutenant in the Third District Detective Unit and has engaged in a pattern of discriminatory conduct against Plaintiff and other African American officers.

11. Defendant Captain McHauley Murphy serves in the Third District and has participated in creating a hostile work environment through inappropriate communications and conduct.

## FACTUAL ALLEGATIONS

12. Plaintiff joined MPD in July 2012 and maintained an exemplary record throughout his career, serving in prestigious assignments including the Chief's Office and the Mayor's Detail without any performance issues or disciplinary actions.

13. Plaintiff first experienced racial discrimination in 2014 when a white officer made racial remarks about Black children and a Black woman's family. This incident marked the beginning of a pattern of discriminatory treatment that would persist and escalate over the next decade.

14. Despite the hostile environment, Plaintiff pursued his education, earning both a master's and doctoral degree in history over seven and a half years, demonstrating his commitment to professional development and excellence.

15. The discrimination intensified when Plaintiff was assigned to the Third District Detective Unit under Lieutenant Barcus. From November 2022 forward, Lieutenant Barcus engaged in a pattern of targeting African American officers, including Plaintiff and Sergeants Brown and Fenton.

16. Lieutenant Barcus repeatedly subjected Plaintiff to hostile treatment, including yelling at him during phone conversations and in-person meetings, making disparaging remarks about his intellectual abilities, and assigning him an disproportionate workload compared to non-African American officers.

17. Lieutenant Barcus allowed Detective Wilks (white) to work from home and permitted Sergeant Davila (Hispanic) to create his own schedule, while denying similar accommodations to African American officers.

18. The discriminatory treatment included manipulating performance evaluations, initiating unwarranted investigations, and creating pretextual documentation to build a negative record against Plaintiff.

19. After Plaintiff reported discriminatory practices and filed an EEO complaint, Defendants escalated their retaliatory actions. Lieutenant Barcus initiated an investigation against Plaintiff for leaving work early, while taking no action against white employees who committed more serious infractions.

20. When Plaintiff sought medical leave and accommodation in February 2024, Commander Boteler publicly accused him of "going sick" and spread false rumors about Plaintiff faking illness to avoid work assignments.

21. Following Plaintiff's promotion to Lieutenant in January 2024, Defendants deliberately reassigned him back to the Third District, placing him (in close proximity to and in frequent interactions with individuals whom he had previously filed EEO complaints against and whom he previously worked under their supervision, despite knowing this would create a hostile work environment. Additionally, after filling EEO complaints against Commander Boteler he was still forced to work under Commander Boteler's supervision despite knowing this would create a hostile work environment.) under the supervision of individuals against whom he had filed EEO complaints, despite knowing this would create a hostile work environment.

22. On June 26, 2024, Commander Boteler made racially charged comments during a mandatory virtual meeting, referring to an African American lieutenant as looking like a "jail house thug," demonstrating the ongoing nature of racial hostility in the department.

23. In July 2024, Captain Murphy engaged in a pattern of inappropriate and demeaning communications, including sending sexually suggestive photographs and using unprofessional language in official communications, contributing to the hostile environment.

24. The cumulative effect of Defendants' actions has created a pervasively hostile work environment. Plaintiff has experienced severe emotional distress, requiring medical treatment and affecting both his professional and personal life.

25. The hostile environment has been so severe that Plaintiff has considered early retirement, despite the significant financial impact this would have on his family.

## CAUSES OF ACTION

### COUNT I
### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964

26. Plaintiff incorporates by reference paragraphs 1-25 above.

27. Defendants have engaged in a continuous pattern of racial discrimination against Plaintiff through disparate treatment in work assignments, performance evaluations, disciplinary actions, and promotional opportunities.

28. Defendants subjected Plaintiff to adverse employment actions, including unwarranted investigations, excessive scrutiny, and denial of accommodations routinely granted to non-African American officers. Lieutenant Barcus's differential treatment of white and Hispanic officers compared to African American officers demonstrates clear racial bias in the application of departmental policies.

29. The temporal proximity between Plaintiff's protected activities and adverse actions, combined with evidence of differential treatment based on race, establishes discriminatory intent. Where pretext was demonstrated through inconsistent application of policies, Plaintiff can show that disciplinary measures were applied discriminatorily based on race.

## COUNT II
### Retaliation in Violation of Title VII

30. Plaintiff incorporates by reference paragraphs 1-29 above.

31. Plaintiff engaged in protected activity by reporting racial discrimination, filing EEO complaints, and opposing discriminatory practices within the department. His opposition to discriminatory practices was known to Defendants, as evidenced by their immediate negative reactions and subsequent adverse actions.

32. Following Plaintiff's protected activities, Defendants engaged in a series of retaliatory actions, including initiating pretextual investigations, manipulating performance evaluations, denying reasonable accommodations, and deliberately reassigning him to work under supervisors against whom he had filed complaints.

33. The causal connection between protected activities and adverse actions is demonstrated by both temporal proximity and direct evidence of retaliatory intent, including Commander Boteler's public accusations about Plaintiff "going sick" and Lieutenant Barcus's selective enforcement of departmental policies.

## COUNT III
### Hostile Work Environment Based on Race

34. Plaintiff incorporates by reference paragraphs 1-33 above.

35. Defendants created and maintained a racially hostile work environment through persistent harassment, intimidation, and discriminatory treatment. This hostile environment has existed for over ten years, with particular intensity in the past four years.

36. The harassment was severe and pervasive, affecting the terms and conditions of Plaintiff's employment through daily intimidation, excessive scrutiny, racially charged comments, and systematic undermining of his authority and professional standing.

37. The hostile environment culminated in Commander Boteler's public use of racial stereotypes in referring to African American officers as "jail house thugs" and Captain Murphy's inappropriate communications that specifically targeted and demeaned African American individuals.

### COUNT IV
### Disability Discrimination and Failure to Accommodate in Violation of the ADA

38. Plaintiff incorporates by reference paragraphs 1-37 above.

39. Defendants discriminated against Plaintiff based on his disability and need for medical accommodation, refusing to provide reasonable accommodations while granting similar requests to non-African American officers.

40. Defendants retaliated against Plaintiff for requesting medical accommodation by publicly questioning the legitimacy of his medical conditions, spreading false rumors about his use of medical leave, and using his requests for accommodation as a basis for further discrimination.

### COUNT V
### Civil Rights Violations Under 42 U.S.C. § 1983

41. Plaintiff incorporates by reference paragraphs 1-40 above.

42. Defendants, acting under color of law, deprived Plaintiff of his constitutional rights to equal protection and due process through a pattern of discriminatory treatment and retaliation based on race.

43. The District of Columbia is liable for these violations through its customs, policies, and practices that permitted and encouraged discriminatory treatment of African American officers, as evidenced by the systematic targeting of Plaintiff and other African American officers in the Third District.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

44. Declare Defendants' actions unconstitutional and unlawful;

45. Issue a permanent injunction prohibiting Defendants from engaging in discriminatory practices and requiring implementation of effective anti-discrimination policies;

46. Order Defendants to immediately transfer Commander Boteler (Commander Botler has been transferred from the Third District due to poor behavior with an African American sergeant) and Lieutenant Barcus from the Third District;

47. Order Plaintiff's immediate reassignment to a position away from those who have participated in discrimination against him, with specific consideration for positions at the Metropolitan Police Academy, Executive Protection Unit, or other specialized units commensurate with his qualifications;

48. Award compensatory damages for emotional distress, mental anguish, and loss of enjoyment of life;

49. Award punitive damages against the individual defendants for their willful and malicious conduct;

50. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

51. Award back pay and front pay where applicable;

52. Award prejudgment and post-judgment interest;

53. Order Commander Boteler to make formal apologies to those he has demeaned through discriminatory comments;

54. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____

 /s/*Charles Tucker, Jr., Esq.*
Charles Tucker, Jr., Esq. (Bar: 993515)
8181 Professional Pl. Suite 207
Hyattsville, MD 20785
E-mail: charles@tuckerlawgroupllp.com
Tel.: (301) 577-1175